STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 5236401)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    FAX: (415) 436-7234
    Ross.weingarten@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 20-369-01 SI |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| KHARI MOORE, | |
| Defendant. | |

## I.    INTRODUCTION

The defendant stands before the Court to be sentenced on October 22, 2021, after pleading guilty to both counts in the above-captioned Superseding Information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 846, 841, and 841(b)(1)(D), and Brandishing of a Firearm During and in Relation to and in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  The violation of 18 U.S.C. 924(c) carries a seven-year mandatory minimum sentence.

The defendant was originally charged by indictment with crimes violations of 18 U.S.C. § 1951(a) – Conspiracy to Commit Robbery Affecting Interstate Commerce (Count One); 18 U.S.C. § 1951(a) and 2 – Attempted Robbery Affecting Interstate Commerce (Count Two); 18 U.S.C. § 924(c)(1)(A)(iii) – Discharge

GOVT SENT. MEM.
CR 20-369-01 SI

1

of a Firearm During and in Relation to and in Furtherance of a Crime of Violence and a Drug Trafficking Crime (Count Three); 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(D) – Conspiracy to Distribute and Possess with Intent to Distribute Marijuana (Count Four); and 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(D) – Attempted Possession with Intent to Distribute Marijuana (Count Five).

The government concurs with the description of the Defendant's conduct in the Presentence Report ("PSR"), the Guidelines calculation, and the advisory Guidelines range.[1]  The government recommends that the Court impose a custodial sentence of 90 months in this case.  That sentence takes into consideration the seriousness and dangerousness of the Defendant's conduct, specifically the fact that the Defendant brought a firearm to a drug deal and shot another individual in the face, nearly killing him.

## II.    THE GOVERNMENT REQUESTS THAT THE COURT IMPOSE A SENTENCE OF 90 MONTHS

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). As the Ninth Circuit has held, Courts should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id*.  The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Kimbrough*, 552 U.S. 85, 108 (2007) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007)), and are to be kept in mind "throughout the sentencing process." *Gall*, 552 U.S. at 50, n. 6. As noted by the Ninth Circuit, the Supreme Court has "clarified that we may attach a presumption of reasonableness to sentences falling within the Guidelines range." *United States v. Saeturn*, 504 F.3d 1175, 1178 (9th Cir. 2007) (emphasis added).  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.  Here, the Sentencing Guidelines place the "starting point" and "initial benchmark" at 0-6 months for the marijuana

---

[1] The government notes for the Court that in the defendant's plea agreement, the parties agreed that two level increases for Possession of a Dangerous Weapon, §2D1.1(b)(1), and Use of Violence, §2D1.1(b)(2) were appropriate and applicable with respect to the count charging the defendant with a violation of 21 U.S.C. § 841.  The government and the defense subsequently agreed that based on the Application Notes to the Guidelines, these enhancements do not apply because the defendant is pleading to the violation of 18 U.S.C. § 924(c).  Defense counsel filed a stipulation outlining this change, Dkt. No. 104.  Accordingly, the government agrees with Probation that the defendant's applicable Guidelines range for the § 841 count is 0-6 months and the mandatory minimum sentence for the § 924(c) count is 84 months.

GOVT SENT. MEM.                                                2
CR 20-369-01 SI

count and a mandatory 84 months for the count alleging the defendant brandished a firearm during and in relation to and in furtherance of a drug trafficking crime.

Beyond the Guidelines, under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for defendant, the Court should consider these factors, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence imposed to protect the public from further crimes of the defendant;

(5) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### A.    The Defendant's Conduct was Extremely Dangerous and Caused Life-Threatening Injuries for the Victim

With respect the nature and circumstances of the offense, the Defendant and his co-defendant, Malik Lott, contacted sellers[2] of marijuana on the internet and agreed to purchase four pounds of marijuana for $4,000.  They intended to resell the marijuana for a profit.  The defendant and Lott drove from the Stockton area to Redwood City, California on April 8, 2018 and met with the sellers in a liquor store parking lot.  The four men met in a pick-up truck—the sellers were in the front seat, and the defendant and Moore were in the back.  At the initial meeting, the defendant and Lott tried samples of the marijuana, and then the sellers and the buyers parted ways, ostensibly so the sellers could retrieve the four pounds of marijuana and the buyers could return with the $4,000 to complete the sale.

The four individuals returned to the truck and met again.  What happened next and why it happened is contested.  The sellers told the government that the defendant and Lott attempted to rob them of the marijuana.  According to the sellers, the defendant (who was seated behind the driver of the pick-up truck)

---

[2] The seller of the marijuana, Ricardo Castillo, and the supplier of the marijuana, Alexander Cenedella, were both charged by the government and sentenced to terms of Probation by this Court. *See* 19-cr-626 SI.

GOVT SENT. MEM.                                     3
CR 20-369-01 SI

pulled out a .45 caliber pistol, showed it to the sellers, and said "come up off it," which the sellers interpreted to mean that the defendant wanted them to give him the marijuana.  At the same time, according to the sellers, Lott reached into the front seat to grab the four pounds of marijuana, which was on the front seat floorboard.  This suggests a coordinated plan to rob the sellers of the marijuana at gunpoint.

The defendant and Lott tell a very different story.  According to the defendant, he noticed that the driver of the pickup truck had a gun in his lap.  The government agrees that the driver had a gun, but it is contested where the gun was located and whether the defendant saw it.  Therefore, according to the defendant, they believed that they were the ones in danger.  The defendant and Lott argue that there was never a plan to rob the sellers of marijuana, and that they went to Redwood City intending to purchase the marijuana and pay for it.  Further, the defendant argues that the sellers of the marijuana also fired their gun back towards the defendant and Lott, and there is ballistic evidence to at least support this version of events.

Despite this chaotic scene, what happened next is undisputed.  The driver of the vehicle attempted to flee the pick-up truck and the defendant shot him multiple times at close range in the face and back with a .45 caliber pistol.  One of the bullets passed through the driver's cheek and out the other side of his mouth.  The driver was gravely wounded, spent days in a coma, and has had numerous reconstructive surgeries.  It is nothing short of a miracle that he is alive.  His life, however, has been irreparably harmed and he will never be the same as he was before the shooting.

The defendant and Lott fled the scene and returned to Stockton without the marijuana (which was found by law enforcement at the scene).  The government identified them through fingerprint evidence found at the scene of the shooting, text messages with the sellers, as well as surveillance footage from nearby businesses showing the defendant and Lott walking to and fleeing from the car where the driver was shot.

The facts of this case illustrate unequivocally that illegal drug dealing in any form carries the great potential to lead to violence.  This is especially true when guns are possessed and used.  No matter whether the defendant and Lott attempted to rob the sellers of marijuana, or it was a chaotic scene involving multiple guns, the end result is the same—the defendant shot a person multiple times at close range, nearly killing him due to a drug deal gone horribly wrong.  While this Court has sentenced other defendants as part of this larger narcotics conspiracy, and will sentence Mr. Lott on the same day as this defendant, the government notes that the defendant's conduct is far and away the most serious.  Regardless of others in the car had guns,

GOVT SENT. MEM.                                 4
CR 20-369-01 SI

the defendant possessed a firearm, pulled the trigger, and shot the victim multiple times in the face and back. The defendant is lucky he faces the charges he does today as opposed to murder, for it is a miracle that the victim survived. While others may have been culpable, the defendant deserve a longer sentence than his codefendant and the sellers or supplier of the marijuana.

With respect to the Defendant's history and characteristics, the PSR states that the defendant has no adult criminal convictions. However, the defendant was charged for a December 2019 robbery of a marijuana dispensary, a charge that is at least arguably consistent with his conduct in this case of bringing a gun to a marijuana deal and shooting the victim. The government understand that case has not yet resolved. The government also notes the mitigating factors present in this case—specifically the defendant's difficult upbringing, the fact that he has had multiple family members die from gun violence, and that he himself has been shot—which are detailed in the PSR.

## III.    CONCLUSION

Due to the serious and dangerous nature of the conduct in this case, the government respectfully requests that the Court impose a 90 month sentence to be followed by five years of supervised release. That sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

DATED:  October 17, 2021                          Respectfully submitted,

                                                  STEPHANIE M. HINDS
                                                  Acting United States Attorney


                                                  _____/s/_____
                                                  ROSS WEINGARTEN
                                                  Assistant United States Attorney